IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


REGENICIN, INC.,                    )
                                    )
          Plaintiff,                )
                                    )        CIVIL ACTION FILE
v.                                  )
                                    )        NUMBER 1:13-cv-3596-TCB
LONZA WALKERSVILLE, INC., et al.,   )
                                    )
          Defendants.               )

## O R D E R

This case comes before the Court on several motions: Plaintiff
Regenicin, Inc.'s motion to remand [10], Defendants Lonza Walkersville,
Inc. and Lonza America, Inc.'s motion to dismiss or for a more definite
statement [3], and two motions [7, 8] filed by Regenicin related to service
of process.


## I.    Background

Regenicin filed this action in the Superior Court of Fulton County,
Georgia on September 30, 2013.  On October 31, Lonza removed it to this
Court.  This is a dispute between two businesses over a contract.  The
following facts are taken from Regenicin's complaint.

Lonza researches and develops pharmaceutical and life sciences products.[1]  One product developed by Lonza, called PermaDerm, generates a skin substitute from a patient's own skin cells.  Regenicin develops regenerative cell therapies.

On July 21, 2010, Lonza and Regenicin signed a contract calling for Regenicin to pay Lonza three million dollars.  In exchange, Lonza gave Regenicin an exclusive license to use proprietary information about PermaDerm to seek approval for the product from the Food and Drug Administration.  Lonza agreed to help Regenicin apply for FDA approval and to remit to Regenicin the proceeds of two grants.

If Regenicin won FDA approval for PermaDerm, three more obligations would arise under the contract: the parties would execute a stock purchase agreement calling for Regenicin to pay an additional two million dollars to buy all the stock of Cutanogen Corporation, a Lonza subsidiary that held a PermaDerm patent; Regenicin would use Lonza as its exclusive manufacturer and distributor of PermaDerm; and the two would share the revenue generated from selling the product.

---

[1] There are several Lonza entities involved in this suit: Lonza Group, Ltd., Lonza America, Inc. and Lonza Walkersville, Inc.  The Court will refer to them interchangeably as "Lonza" until a distinction must be made to discuss service of process and allegations of shotgun pleading.

Regenicin avers that in 2011, Lonza negotiated to sell one of its facilities to a Chinese company for $750 million, but the Chinese company insisted that Lonza license to it the PermaDerm rights already granted to Regenicin.  According to Regenicin, Lonza concluded that selling to the Chinese company was a better business proposition, so it sought a way out of the Regenicin contract.  On May 17, 2012, Lonza sent a letter to Regenicin stating that Regenicin had breached the contract by failing to pay outstanding invoices.  On July 20, Regenicin responded with its own letter claiming that Lonza was the one who had breached.  Regenicin avers that it satisfied its obligations under the contract, and to the extent that it did not, Lonza's conduct prevented it from doing so.

Regenicin avers that Lonza breached the contract in the following ways: by telling Regenicin it was receiving an exclusive license, but in fact giving similar "exclusive" licenses to thirteen other companies; by failing to give Regenicin all the required proprietary information about PermaDerm; by failing to remit grant proceeds to Regenicin; and by failing to execute the Cutanogen stock purchase agreement.

Regenicin avers that Lonza made various misrepresentations about the FDA's approval and designation of PermaDerm and Lonza's

3

development and clinical trials of the product.  Because Regenicin's averments of misrepresentations take up twenty-seven paragraphs of its complaint, the Court will not repeat them here. *See* [1-1] at 28-35.

Regenicin avers that Lonza acted in bad faith and tortiously interfered in the following ways: by abandoning the PermaDerm trademark but attempting to stop Regenicin from registering the trademark; by refusing to cooperate or comply with the FDA and preventing Regenicin from complying with the FDA's instructions; by changing the PermaDerm manufacturing process without instructing or consulting Regenicin; by charging Regenicin for services that were unauthorized or not performed; by refusing to share important information about PermaDerm with Regenicin; by refusing to approve almost all press releases and presentations Regenicin prepared for its investors and shareholders; and by instructing contractors and businesses not to communicate with Regenicin about PermaDerm.  Finally, Regenicin avers that Lonza infringed on the PermaDerm trademark and patent and violated various federal and state statutes.

Regenicin has stated eighteen causes of action related to Lonza's conduct: (1) breach of contract, (2) breach of the duty of good faith and fair

dealing, (3) tortious interference with business relations, (4) tortious interference with prospective contractual relations, (5) tortious interference with existing contractual relations, (6) negligent misrepresentation, (7) common law fraud, (8) fraudulent inducement, (9) violation of the New Jersey Consumer Fraud Act, N.J. STAT. ANN. § 56:8-2, (10) trademark infringement, (11) patent infringement, (12) unjust enrichment, (13) quantum meruit, (14) prima facie tort, (15) violation of the New Jersey Uniform Securities Law, N.J. STAT. ANN. §§ 49:3-52, -71, (16) violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, (17) violation of the New Jersey Racketeering Act, N.J. STAT. ANN. §§ 2C:41-1 to -6.2, and (18) violation of the federal RICO Act, 18 U.S.C. § 962(c).

Two motions made by Regenicin in state court, both related to service of process on a Lonza entity located in Switzerland, were pending upon removal and followed this action here. After removal, Regenicin moved for remand and Lonza moved to dismiss or for a more definite statement.

## II.    Legal Standard

### A.    Motion to Remand

A defendant in a state action may remove an action to this Court if the Court would have jurisdiction over it.  28 U.S.C. § 1441(a).  The Court may have original jurisdiction over claims in an action under diversity of citizenship, *see* 28 U.S.C. § 1332, or federal question, *see* 28 U.S.C. § 1331. Even if some claims are under state law and do not invoke original jurisdiction, the Court may hear the claims if they invoke supplemental jurisdiction.

State-law claims invoke supplemental jurisdiction if they are so related to the federal claims that "they form part of the same case or controversy." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting 28 U.S.C. § 1367); *see also Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002).  The "same case or controversy" test is satisfied if "the [federal and state] claims arise from the same facts[] or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996); *see Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997) (stating the "common nucleus of operative fact" standard).

If a state-law claim invokes supplemental jurisdiction, the Court may nevertheless decline to exercise jurisdiction after considering the following four factors: (1) whether the claim raises a novel or complex issue of state law; (2) whether the state-law claim substantially predominates over the federal-law claim(s); (3) whether the federal-law claims have been dismissed; or (4) whether, in exceptional circumstances, there are other compelling reasons for declining supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); *Int'l Coll. of Surgeons*, 522 U.S. at 173. The second factor, substantial predomination, exists if "a state claim constitutes the real body of a case [and] the federal claim is only an appendage." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006) (internal quotation marks omitted). And the Court determines whether the fourth factor applies by considering judicial economy, convenience, fairness to the parties and whether all the claims would usually be tried together. *See id.* at 745.

The removing party must prove jurisdiction by showing that each claim invokes either original or supplemental jurisdiction. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008). If

jurisdiction is not proved, the non-removing party may seek remand to state court.  28 U.S.C. § 1447.

### B.   Motion for a More Definite Statement

Under Federal Rule of Civil Procedure 8, the Court will order a plaintiff to replead if its complaint is a shotgun pleading.  *See Magluta v. Samples*, 256 F.3d 1282, 1284-85 (11th Cir. 2001) (holding that a shotgun pleading is "in no sense the 'short and plain statement of a claim' required by Rule 8 of the Federal Rules of Civil Procedure").

The defining characteristic of a shotgun complaint is that it fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading."  *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).  The "typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those

that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.").

Shotgun pleadings also fail to specify which defendant is responsible for each act alleged. *See Beckwith*, 146 F. App'x at 373 ("It is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant."); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (dismissing shotgun complaint that made "factual allegations that could not possibly be material to any of the causes of action.").

## III.   Discussion

The Court must first decide the motion to remand.  If the Court lacks subject matter jurisdiction, it must remand this action to state court and cannot rule on either the motion to dismiss or the motions related to service of process.  *See* 28 U.S.C. § 1447(c).

### A.   Motion to Remand

There is no dispute that two of Regenicin's claims invoke original jurisdiction.  Claims sixteen and eighteen arise under Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and the Racketeer

Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c), respectively. Because those two claims arise under laws of the United States, they invoke federal question jurisdiction.  28 U.S.C. § 1331; *see Metro. Life. Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  The Court has jurisdiction over those two claims and will not remand them.

The dispute is over the remaining claims.  They are state-law claims and thus do not invoke original jurisdiction.[2]  But they may still invoke supplemental jurisdiction, and here the parties disagree.  Regenicin, hoping for remand, argues the state- and federal-law claims are not so related that they are part of the same controversy.  In the alternative, Regenicin argues that the Court should decline supplemental jurisdiction over the state-law claims because they invoke novel and complex issues of state law and because they substantially predominate over the federal-law claims.  Lonza argues the opposite on each score.

---

[2] The parties dispute whether claims ten and eleven—involving the PermaDerm trademark and patent—invoke original federal jurisdiction.  But the Court will not resolve that question because, as discussed below, all the remaining claims are within the Court's supplemental jurisdiction.  Commentators with more expertise than the Court have described the question of whether a claim invokes federal question jurisdiction under the patent laws as "one of the darkest corridors of the law of federal courts and federal jurisdiction."  13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3582 (3d ed. 1998) (quoting Donald Shelby Chisum, *The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation*, 46 WASH L. REV. 633 (1971)).  The Court declines to needlessly enter such dark corridors.

Each claim is part of the same case or controversy.  Regenicin states numerous causes of action, but each relates to the PermaDerm contract and Lonza's conduct toward Regenicin regarding PermaDerm.  Each claim "arise[s] from the same facts" and "involve[s] similar occurrences, witnesses or evidence."  *Hudson*, 90 F.3d at 455 (citing *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994)).  Indeed, the claims involve identical, not just similar, occurrences, witnesses and evidence.  Every claim states a different theory of how Lonza breached the PermaDerm contract, acted tortiously in its performance (or nonperformance) of the contract, or violated a law in its actions related to the contract.  The controversy is the same.

Regenicin argues that the two claims that clearly invoke federal question jurisdiction—claims sixteen and eighteen, arising under the Securities and Exchange Act and the RICO Act—relate to one portion of the PermaDerm contract, and the state-law claims relate to another portion. Regenicin argues that the two undeniably-federal claims relate to the portion of the contract in which Regenicin agreed to purchase Cutanogen stock, and the state-law claims relate to other portions of the contract unrelated to the stock purchase.  This may be so, but it frames the "same

case or controversy" question at too low a level of specificity.  Every claim involves the PermaDerm contract and the parties' conduct in relation thereto.  It makes no difference that the federal-law claims involve article nine of the contract and the state-law claims involve articles two, three, and others.  To decide the case, a jury will have to decide whether Lonza breached the contract.  The claims arise from the same facts—the contract and Lonza's conduct in performing it—and form the same case or controversy—whether the contract was breached, and by whom.

Because the state-law claims form the same case or controversy as the federal-law claims, the Court has supplemental jurisdiction over them.  But it may still decline to exercise supplemental jurisdiction.  Regenicin argues that the Court should do just that, for three reasons.  None is persuasive.

*First*, Regenicin argues that its state-law claims raise novel or complex issues of state law, so the Court should decline supplemental jurisdiction.  But the state-law issues are not especially novel or complex. *See Parker*, 468 F.3d at 743-44 ("Generally, state tort claims are not considered especially novel or complex.") (collecting cases); *United States v. Boland*, 922 F. Supp. 597, 599 (S.D. Fla. 1996) (holding breach-of-contract claims are "hardly a novel or complex issue of state law in which

the federal court should decline to intervene").  Regenicin's state-law claims are garden-variety business contract disputes.  The contract may be complex and the relationship between the parties may be labyrinthine, but the legal issues are neither.

This case is unlike those in which district courts decline supplemental jurisdiction because the state-law issues are novel or complex.  *See, e.g.*, *Romero v. Drummond Co.*, 552 F.3d 1303, 1318 (11th Cir. 2008) (explaining the district court declined supplemental jurisdiction because it could not "reconcile conflicting translations of Colombian legal precedents"); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 731 F. Supp. 2d 849 (E.D. Wisc. 2010) (declining supplemental jurisdiction where the state-law question was one of first impression).  Here, there are no especially complex issues of state law, so the Court will not decline supplemental jurisdiction on this ground.

*Second*, Regenicin argues that its state-law claims substantially predominate over its federal-law claims and the Court therefore should decline supplemental jurisdiction.  But as discussed immediately above, all Regenicin's claims flow from the same conduct.  Regenicin has simply stated numerous causes of action, both state and federal, related to Lonza's

alleged breach of contract and its offending conduct related to PermaDerm. Just because most of Regenicin's claims arise under state law does not mean the state-law claims predominate. *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) ("It is true that the state claims here outnumber the federal claims. The 'substantially predominate' standard, however, is not satisfied simply by a numerical count of the state and federal claims . . . ."). Each claim flows from the same conduct, so the Court cannot say that the state-law claims predominate. This is a relatively straightforward breach-of-contract case, and it is "unlikely [that] a straightforward state law breach of contract claim would substantially predominate over Plaintiff's federal claims." *Hunt v. 21st Mortg. Corp.*, No. 2:12-cv-381-RDP, 2012 WL 3903783, at *5 (N.D. Ala. Sept. 7, 2012).

*Third*, Regenicin argues that there are exceptional circumstances or other reasons why the Court should decline supplemental jurisdiction. But Regenicin does not identify what these circumstances or reasons might be, other than to note that remand would honor "values of economy, fairness, and comity." [10] at 12-13. The Court disagrees: values of economy and fairness militate in favor of hearing the entire action in this Court. And the Court cannot fathom any exceptional circumstances that would warrant

remand under the § 1367(c)(4) catchall.  *Cf. People ex rel. Lockyer v. Cnty. of Santa Cruz*, 416 F. Supp. 2d 797 (N.D. Cal. 2006) (finding exceptional circumstances and remanding where the case was an internal dispute between two arms of the state government).

Remand is not warranted.  Having decided that jurisdiction is proper, the Court will proceed to consider the other pending motions.

### B.   Motion for a More Definite Statement

#### 1.   Shotgun Pleading

Lonza argues that the Court should dismiss Regenicin's complaint or order it to replead because its complaint is an impermissible shotgun pleading.  Lonza has two principal objections to the form of Regenicin's complaint: first, that it is overlong, overuses incorporation of antecedent paragraphs, and does not conform to Rule 8's "short and plain" requirement; and second, that it fails to ascribe conduct to specific Defendants, instead grouping each Lonza entity together as one.

It is true that Regenicin's complaint is long.  It spans ninety-three pages and includes eighteen counts.  And while length is a factor in determining whether a complaint is a shotgun pleading, Regenicin's complaint does not have the hallmark of shotgun pleading: it is not

15

"virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (internal citations omitted).  While Regenicin's complaint is not as succinctly pled as it could be, the relationship between Regenicin and Lonza is a complicated one, spanning nearly ten years and millions of dollars.  Considering their relationship and Regenicin's numerous allegations, a lengthy pleading is probably unavoidable.

Courts have dismissed or ordered repleading of shotgun complaints where they are filled with "irrelevant factual allegations and legal conclusions," *Strategic Income*, 305 F.3d at 1296; made up of "rambling recitations" and immaterial factual allegations, *Pelletier*, 921 F.2d at 1517; replete with material allegations "that are buried beneath innumerable pages of rambling irrelevancies," *Magluta*, 256 F.3d at 1284; and where the court, upon reading the complaint, could not even "explain what allegedly transpired between and among" the parties, *Strategic Income*, 305 F.3d at 1295.

This is not such a case.  After a single reading of the complaint the Court was able to understand Regenicin's general averments.  With that

said, Regenicin does use excessive incorporation of antecedent paragraphs: each count begins with a statement that Regenicin "repeats and re-alleges all preceding allegations and subsequent Counts in this Complaint against Defendants as if set forth herein."  While Rule 10(c) explicitly permits incorporation by reference, overusing the technique and "indiscriminately incorporate[ing] assertions from one count to another" is problematic. WRIGHT & MILLER, § 1326; *see Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1356 n.9 (11th Cir. 2002) (criticizing the plaintiff's complaint as a shotgun pleading where "each count 'incorporates' all of the preceding paragraphs and counts").

In addition to the overuse of incorporation, the Court finds merit in Lonza's second objection to Regenicin's complaint: the grouping of Defendants.  Lonza argues that Regenicin's complaint is a shotgun pleading because it fails to ascribe each of its allegations to a specific Defendant.  The Court agrees.  While its general allegations may be clear enough, Regenicin does not ascribe those allegations to specific Defendants.  It repeatedly refers to "Defendants" as a group rather than specifying which Defendant engaged in what conduct.  *See, e.g.*, Compl. ¶¶ 153 ("Defendants knew . . . ."), 161 ("Defendants maliciously interfered . . . ."), 171 ("Defendants owed

Regenicin a special duty of care . . . ."), 179 ("Defendants fraudulently deceived . . . ."), 187 ("Defendants made the following material misrepresentations . . . ."), 195 ("Defendants willfully and fraudulently deceived Regenicin . . . ."), 204 ("Defendants reproduced, copied, or made colorable imitation of the intellectual property . . . ."), 217 ("Regenicin's rights to Patent Number 7452720 have been improperly infringed upon by Defendants."), 224 ("Defendants have retained money that rightly belongs to Regenicin."), 231 ("Defendants knowingly and willingly accepted the services rendered by Regenicin[.]"); 238 ("Defendants' series of intentional, willful and malicious acts were unlawful.").  There are three Defendants in this action, and Regenicin must be more specific in ascribing its allegations among them.

Regenicin must replead its complaint to attribute its allegations to specific Defendants and to excise unnecessary incorporation by reference. It is not enough to group all the Lonza entities together as "Defendants." Doing so, in combination with excessive incorporation, makes it "virtually impossible to ascertain . . . which claim is directed at which [D]efendant," *Beckwith*, 146 F. App'x at 372, and which specific facts apply to which count.

### 2.    Rule 9(b) Pleading

Lonza also argues that several of Regenicin's counts fail to adhere to

Federal Rule of Civil Procedure 9(b).  Under that rule, a complaint alleging

fraud "must state with particularity the circumstances constituting fraud."

FED. R. CIV. P. 9(b).

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely
> what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time
> and place of each such statement and the person responsible for
> making (or, in the case of omissions, not making) same, and (3)
> the content of such statements and the manner in which they
> misled the plaintiff, and (4) what the defendants obtained as a
> consequence of the fraud.

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310

(11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202

(11th Cir. 2001)).  Regenicin has failed to meet this standard.  For instance,

in its "common law fraud" count, number seven, it merely avers that

"Defendants," as a group,

> fraudulently deceived Regenicin when they promised to,
> amongst other things, exclusively license certain intellectual
> property rights related to PermaDerm to Regenicin and then
> failed to perform their obligations under the Regenicin/Lonza
> [contract] and other related agreements . . . .

Compl. ¶ 179.  Regenicin then sets out a laundry list of alleged

misrepresentations, but fails to aver who made them, when and where they

were made or the specific content of each misrepresentation.  This fails to meet the Rule 9(b) requirements set out above.

The same is true in each of Regenicin's fraud or fraud-related counts, including count six (negligent misrepresentation), count seven (common law fraud), count eight (fraudulent inducement), count nine (violation of the New Jersey Consumer Fraud Act), count fifteen (violation of the New Jersey Uniform Securities Law), count sixteen (violation of section 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder), count seventeen (violation of New Jersey state RICO law), and count eighteen (violation of federal RICO law).

Rule 9(b)'s heightened pleading standards applies to each of those counts.  *See Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748 (11th Cir. 2013) (negligent misrepresentation); *Rogers v. Nacchio*, 241 F. App'x 602, 608-09 (11th Cir. 2007) (common law fraud); *id.* (fraudulent inducement); *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (New Jersey Consumer Fraud Act); *Home Care Indus. v. Murray*, No. Civ.A.00-3305, 2002 WL 32627452, at *3 (D.N.J. Nov. 27, 2002) (New Jersey Uniform Securities Law); *Ziemba*, 256 F.3d at 1202 (section 10(b) and Rule 10b-5); *Construcciones Haus Scoeidad v. Kennedy Funding Inc.*, No. 07-cv-0392

(PGS), 2008 WL 1882857, at *5 (D.N.J. Apr. 24, 2008) (New Jersey RICO); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (federal RICO).

Regenicin must replead its complaint to meet the requirements of Rule 9(b).  Lonza requests dismissal based on Regenicin's failure to meet the Rule's requirements, but dismissal is a severe remedy and should be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Regenicin could properly replead and meet Rule 9(b)'s requirements, so the Court will give it leave to do so.

### C.    Motion to Dismiss

Because the Court orders Regenicin to replead its complaint in compliance with Rules 8 and 9, it would be imprudent to consider Lonza's motion to dismiss for failure to state a claim at this time.  Lonza may refile its motion after Regenicin has filed an amended complaint.

**D.     Motions Related to Service of Process**

>    **1.     Motion to Authorize Service Under the Hague
>            Convention**

Regenicin has moved for leave to effect service on Lonza Group, Ltd.

under the Hague Convention.  Regenicin alleges that Lonza Group is

located in Basel, Switzerland.  Regenicin contemplates serving translated

copies of the summons and complaint but requests the Court's permission

to serve exhibits in the original English.  Translating the exhibits, which

span over 500 pages, Regenicin argues, would be unduly burdensome and

is not expressly required by the Hague Convention.

The Federal Rules of Civil Procedure permit service under the Hague

Convention.  FED. R. CIV. P. 4(f)(1).  The Hague Convention sets guidelines

for service of judicial documents between signatories, including the United

States and Switzerland.  *Convention on the Service Abroad of Judicial and

Extrajudicial Documents in Civil or Commercial Matters*, Nov. 15, 1965,

20 U.S.T. 361, 658 U.N.T.S. 163 (1969).

Under the convention, each signatory designates a central authority

for accepting service, and litigants may serve documents on the central

authority, which then forwards them to the recipient.  *Id.*, art 2.

Documents may generally be served in English, French or the official

language of the originating state.  *Id.*, art 7.  But a country's central

authority "may require the document to be written in, or translated into,

[its] official language or one of [its] official languages . . . ."  *Id.*, art. 5.

Switzerland has established just such a requirement. It has specifically

required translation to make service effective:

> Switzerland declares that in cases where the addressee does not
> voluntarily accept a document, it cannot officially be served on
> him or her in accordance with Article 5, first paragraph, unless
> it is in the language of the authority addressed, i.e. in German,
> French or Italian, or accompanied by a translation into one of
> these languages, depending on the part of Switzerland in which
> the document is to be served . . . .

Hague Conference on Private International Law, *Declaring Reservations*,

http://www.hcch.net/index_en.php?act=status.comment&csid=424&disp

=resdn (last visited January 27, 2014); *see Garg v. Winterthur*, 525 F.

Supp. 2d 315, 321-22 (E.D.N.Y. 2007).  To effect service in Basel,

documents must be in German.  Embassy of the United States, *Hague

Convention: Information for Both Service and Evidence Abroad*,

http://bern.usembassy.gov/hague_convention.html (last visited January

27, 2014).

But Regenicin argues that its exhibits should be exempt from this rule

and that it should be required to translate only the summons and

complaint.  The Court disagrees.  A "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  FED. R. CIV. P. 10(c); *see Teknekron Mgmt., Inc. v. Quante Fernmeldetechnik GmbH*, 115 F.R.D. 175, 177 (D. Nev. 1987) (service under the Hague Convention improper where plaintiff "failed to translate a lengthy contract which was attached as an exhibit to the complaint").  Regenicin's claims rely on contracts and other documents between it and Lonza.  If Regenicin wishes to serve a Lonza Defendant in Switzerland, it must conform to the requirements of the Hague Convention with respect to the key documents that underpin its action.

Should it choose to serve Lonza Group in Switzerland under the Hague Convention, and unless Lonza consents to another arrangement, Regenicin must provide translations of any written agreements or other nonpublic documents that are attached to its complaint as exhibits.  That includes the PermaDerm contract between Regenicin and Lonza, shareholders' agreements, stock purchase agreements, invoices, letters of intent, emails or other correspondence, memoranda and any other nonpublic documents.  However, Regenicin need not translate exhibits that

are public documents, including but not limited to annual reports and securities filings, that were created by one or more of the three Defendants.

The Court recognizes that this may be burdensome.  But Regenicin is the master of its action.  If it wishes to serve a Swiss company and hale it into a United States court, it must comply with the relevant treaty.

### 2.    Motion for Determination of Time to Serve Process

Regenicin has also moved for a "determination of time period to serve summons and complaint" on Lonza Group, Ltd. in Switzerland.  This motion was made in the Fulton County, Georgia Superior Court prior to removal, so Regenicin refers only to Georgia law regarding service of process.  Because the Georgia Courts require service within five days unless Plaintiff makes a showing of diligence, O.C.G.A. § 9-11-4(c), Regenicin sought a finding that its efforts to serve Lonza Group, Ltd. under the Hague Convention were diligent.

In the federal courts, a plaintiff generally has 120 days from removal to effect service.  FED. R. CIV. P. 4(m); *Savage v. Ga. Dep't of Transp.*, No. 10-cv-2459-TWT, 2010 WL 5108535, at *1 (N.D. Ga. Nov. 15, 2010); WRIGHT & MILLER, § 1137 ("In removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the

action was originated in state court as was true under former Rule 4(f).").
But the usual 120-day period does not apply to a plaintiff who must effect
service under the Hague Convention.  FED. R. CIV. P. 4(m) ("This
subdivision (m) does not apply to service in a foreign country under Rule
4(f) . . . .").

No binding authority specifies a time period for service under the
Hague Convention.  The rules are silent, and neither the Eleventh Circuit
nor the Supreme Court has spoken on the issue.  Other courts of appeals
have provided guidance, but the law is muddled.

In the Ninth Circuit, the time limit for service under the Hague
Convention is unlimited.  *See Lucas v. Natoli*, 936 F.2d 432, 432-33 (9th
Cir. 1991) (per curiam); *see also Rudolph v. UT Starcom, Inc.*, No. C 07-
04578 SI, 2009 WL 248370, at *3 (N.D. Cal. Feb. 2, 2009) (interpreting
*Lucas* to hold that "the strict time limits imposed by Rule 4(m) do not
apply" to service on a foreign defendant).

The Seventh Circuit expressly disagreed with the Ninth and held the
time limit for service under the Hague Convention is "not unlimited."
*Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005).
But the actual time limit in the Seventh Circuit is unclear.  The panel simply

gave an example of dilatory service but did not decide the issue, writing that

if a plaintiff "made no attempt to begin the process of foreign service within

120 days, it might be proper for a court to dismiss the claim." *Id.* (citing

*O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 952 (7th Cir.

2000)).

Similarly, courts in the Second Circuit will dismiss an action if the

plaintiff has not effected service under the Hague Convention within 120

days, but only, apparently, if the plaintiff has "not exactly bent over

backward to effect service." *DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir.

2010); *see Mentor Ins. Co. (U.K.) Ltd v. Brannkasse*, 996 F.2d 506, 512 (2d

Cir. 1993) (citing *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740

(2d Cir. 1985)).

In the Fifth Circuit, "good faith and reasonable dispatch are the

proper yardsticks" for service under the Hague Convention. *Lozano v.

Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012).

Sitting with the First Circuit, Justice Souter explained that while there

is "no specific time limit" on Hague Convention service, Rule 4(m)'s 120-

day time limit "can be instructive." *Feliz v. MacNeill*, 493 F. App'x 128, 131

(1st Cir. 2012) (Souter, J.). But the First Circuit, like most of its sister

27

circuits, has not set out a bright-line rule.  In *Feliz*, Justice Souter affirmed dismissal based on the plaintiff's months-long delay, describing him as "chargeably torpid" and detailing his "lackadaisical approach to litigation" and "record of sluggishness."  *Id.*  Colorful as those phrases are, they provide little guidance.

Without binding precedent or agreement among persuasive authorities, the Court must blaze its own trail.  Dictum from the Seventh Circuit in *O'Rourke* is instructive.  There, the panel mused that when Rule 4(m) and its 120-day time limit do not apply, as here, courts "could revert to procedures commonly used prior to the enactment of Rule 4(m) . . . ." 201 F.3d at 952.  Before 1983, when Rule 4(m) was enacted,[3] the rules contained no time limit for service of process.  *Id.*; *see Gordon v. Hunt*, 116 F.R.D. 313, 319 (S.D.N.Y. 1987).  Even then, a defendant could move to dismiss an action if the plaintiff delayed in effecting service, but the motion would be under Rule 41(b).  *Id.*  And the standard for dismissal under Rule 41(b) was one of "flexible 'due diligence.'"  *Gordon*, 116 F.R.D. at 319.  So the Seventh Circuit wrote that "perhaps Rule 41(b)" and its diligence

---

[3] In fact, Rule 4(j), not 4(m), was enacted in 1983.  But 4(j) was a predecessor to 4(m), and for relevant purposes they are identical.

28

standard "is precisely the proper" rule to guide courts in cases where Rule 4(m)'s time limit does not apply. *O'Rourke*, 201 F.3d at 952.

The Court agrees, and holds that a due diligence standard is appropriate for service under the Hague Convention. Accordingly, Regenicin may serve Lonza Group, Ltd. under the terms of the Hague Convention so long as it acts with due diligence. Desiring to provide some specific guidance, and recognizing the difficulty inherent in effecting service overseas pursuant to the Hague Convention, the Court finds that service effected by April 30, 2014 is likely to be deemed "diligent."

## IV.   Conclusion

Plaintiff's motion to remand [10] is DENIED. Defendants' motion to dismiss or for a more definite statement [3] is GRANTED IN PART AND DENIED IN PART. Defendants' motion for a more definite statement is GRANTED, and Defendants' motion to dismiss is DENIED with leave to refile if and when Plaintiff repleads. Plaintiff may replead within thirty days of this Order as described above. Plaintiff's motion to authorize alternate service of process [7] is DENIED, and Plaintiff's motion for determination of time period to serve summons and complaint [8] is GRANTED.

IT IS SO ORDERED this 14th day of February, 2014.

_____
Timothy C. Batten, Sr.
United States District Judge