IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| REGENICIN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION FILE |
| v. | ) |
| | ) NUMBER 1:13-cv-3596-TCB |
| LONZA WALKERSVILLE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

### O R D E R

This case is before the Court on the motion of Defendants Lonza Walkersville, Inc. and Lonza America, Inc.[1] to transfer venue [22]. For the reasons set forth below, the motion will be granted.

**I.    Background**

Regenicin filed this action in the Superior Court of Fulton County, Georgia, on September 30, 2013. On October 31, Lonza removed it to this Court, and the Court later denied remand. Lonza now seeks transfer to the District of New Jersey.

---

[1] There are several Lonza entities involved in this suit: Lonza Group, Ltd., Lonza America, Inc. and Lonza Walkersville, Inc. Because making a distinction between them is mostly unnecessary for the purpose of this Order, the Court will refer to them interchangeably as "Lonza." *But see infra* note 7.

This is a dispute between two businesses over a contract. The following facts are taken from Regenicin's complaint.

Regenicin develops regenerative cell therapies. Lonza, the Defendant, researches and develops pharmaceutical and life sciences products. One product developed by Lonza, called PermaDerm, generates a skin substitute from a patient's own skin cells.

On July 21, 2010, Lonza and Regenicin executed a contract calling for Lonza to give Regenicin an exclusive license to use proprietary information about PermaDerm to seek approval for the product from the Food and Drug Administration. In exchange, Regenicin would pay Lonza three million dollars. Lonza agreed to help Regenicin apply for FDA approval and to remit to Regenicin the proceeds of two grants.

If Regenicin won FDA approval for PermaDerm, three more obligations would arise under the contract: the parties would execute a stock purchase agreement calling for Regenicin to pay an additional two million dollars to buy all the stock of Cutanogen Corporation, a Lonza subsidiary that held a PermaDerm patent; Regenicin would use Lonza as its exclusive manufacturer and distributor of PermaDerm; and the two would share the revenue generated from selling the product.

Regenicin avers that in 2011, Lonza negotiated to sell one of its facilities to a Chinese company for $750 million, but the Chinese company insisted that Lonza license to it the PermaDerm rights already granted to Regenicin. According to Regenicin, Lonza concluded that selling to the Chinese company was a better business proposition than continuing its relationship with Regenicin, so it sought a way out of the Regenicin contract. On May 17, 2012, Lonza sent a letter to Regenicin stating that Regenicin had breached the contract by failing to pay outstanding invoices. On July 20, Regenicin responded with its own letter stating that Lonza was the one who had breached. Regenicin avers that it satisfied its obligations under the contract, and to the extent that it did not, Lonza's conduct prevented it from doing so.

Regenicin then filed this suit, which contains eighteen causes of action including, among others, breach of contract, tortious interference, misrepresentation, fraud, breach of state and federal RICO laws, patent and trademark infringement, and violation of state and federal securities laws.

Lonza has now moved to transfer. It argues that while venue in this district is proper, the District of New Jersey is a more appropriate forum for this case. Regenicin resists transfer.

## II. Transfer Under 28 U.S.C. § 1404(a)

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *see Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (stating that the purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" (internal citations omitted)).[2]  The decision to transfer a case under § 1404(a) rests within the Court's sound discretion.  *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 654-55 (11th Cir. 1993).

District courts ask three questions to decide whether transfer is appropriate under § 1404(a).  First, are venue and subject-matter jurisdiction proper in the transferor court, i.e., the court in which the transfer motion is made?  The transferor court needs both in order to transfer under § 1404(a).[3]  *See Van Dusen*, 376 U.S. at 634 ("[Section]

---

[2] Cases that are removed from state to federal court under 28 U.S.C. § 1441(a), as this one was, are subject to transfer under § 1404(a).  *See Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001).

[3] A court lacking subject matter jurisdiction may transfer a case in the interest of justice under 28 U.S.C. § 1631, but not under § 1404(a).  *See* 28 U.S.C. § 1631.

1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege [in the transferor court]."); *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co.*, 417 F.3d 953, 957 (8th Cir. 2005) ("[A] court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)."). But the transferor court need not have personal jurisdiction to transfer. *See James Ventures, L.P. ex rel. Alpert v. Timco Aviation Servs., Inc.*, 315 F. App'x 885, 888 (11th Cir. 2009) (per curiam).

Second, are venue and both subject-matter and personal jurisdiction proper in the transferee court? All three are required for transfer. *See* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3845 (4th ed. 2013) ("Today, courts are uniform in requiring that the transferee [court] have personal jurisdiction over the defendant and constitute proper venue, independent of waiver or consent by the defendant." (collecting cases)); *id.* ("[F]or transfer under [§] 1404(a), both the transferor and the transferee [court] must have subject matter jurisdiction over the case."); *Martin v. S.C. Bank*, 811 F. Supp. 679, 683 (M.D. Ga. 1992); *accord AGCS Marine*

---

("Whenever a civil action is filed . . . and [the] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought . . . .").

*Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 646 (S.D.N.Y. 2011).

Third, if the first two questions are answered affirmatively, the Court finally asks, would transfer serve the interests of justice and convenience? *See* 28 U.S.C. § 1404(a). In making that determination the Court considers three broad interests: the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Moore v. McKibbon Bros., Inc.,* 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998). The Eleventh Circuit has explained that several additional factors are relevant: the location of relevant documents and the relative ease of access to sources of proof; the locus of operative facts; the availability of process to compel the attendance of unwilling witnesses; the relative means of the parties; a forum's familiarity with the governing law; the plaintiff's choice of forum; and trial efficiency and the interests of justice, based on the totality of circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The Court weighs these factors against the "plaintiff's statutory privilege of choosing his forum." *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970).[4]

In so weighing, the Court employs a "strong presumption against disturbing plaintiff's initial forum choice," *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004), but when the chosen forum is not the home district for any party, the plaintiff's choice is entitled to less weight.[5]  On the movant's side of the

---

[4] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit.  *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[5] While the Eleventh Circuit has not addressed the latter point, the judges of this district are in agreement and have been for decades.  *See, e.g.*, *Kolodziej v. Mason*, No. 1:10-cv-2012-JEC, 2011 WL 2009467, at *8 (N.D. Ga. May 20, 2011) ("Although not yet addressed by the Eleventh Circuit, several courts in this district have found that when the forum is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight." (internal citation omitted)); *Tommy Bahama Grp., Inc. v. The Walking Co.*, No. 1:07-cv-1402-ODE, 2007 WL 3156254, at *2 (N.D. Ga. Oct. 19, 2007) ("[W]here the forum is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight." (internal citation omitted)); *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1355 (N.D. Ga. 2004) (Thrash, J.) (same); *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 (N.D. Ga. 1992) (Forrester, J.) (same); *Prather v. Raymond Constr. Co.*, 570 F. Supp. 278, 284 (N.D. Ga. 1983) (Ward, J.) ("[W]here the unlawful act complained of did not occur in the forum selected by the plaintiff and neither the plaintiff nor defendant is a resident of that forum, plaintiff's original selection of the forum is only entitled to minimal weight in deciding a motion for transfer for convenience and in the interest of justice."); *accord A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1310 (N.D. Ala. 2003); *Aeroquip Corp. v. Deutsch Co.*, 887 F. Supp. 293, 294 (S.D. Ga. 1995).  *Cf. Nam v. U.S. Xpress, Inc.*, No. 1:10-cv-3924-AT, 2011 WL 1598835, at *11 (N.D. Ga. Apr. 27, 2011) ("A plaintiff's choice of forum is

7

scale, "[t]he most important factor . . . is the convenience of witnesses." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 842 F. Supp. 2d 1360, 1367 (N.D. Ga. 2012) (quoting *Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989)). But that factor supports transfer only if the movant goes beyond generalities and "make[s] a specific showing of inconvenience to the witnesses." *Id.*

Ultimately the movant bears the burden of showing that transfer is appropriate. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). And that burden is not light; if the movant merely shows that transfer would "shift inconvenience from one party to the other" or that "the balance of all factors is but slightly in favor of the movant," transfer should be denied. *Bell v. K-Mart Corp.*, 848 F. Supp. 996, 998 (N.D. Ga. 1994) (quoting *Grey v. Cont'l Mktg. Assocs., Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)).

### B. Analysis

Here, the parties and the Court agree that the first and second questions must be answered affirmatively. First, venue and subject-matter jurisdiction are proper in this Court. *See* [22-1] at 6 (Lonza admitting

---

afforded less weight, however, if the majority of the operative events occurred elsewhere." (quoting *Hidalgo v. Ohio Sec. Ins. Co.,* No. 4:10-cv-183-HLM (N.D. Ga. Feb. 24, 2011) (unpublished)).

venue is proper in this Court); [21] at 9-10 (order refusing to remand because the claims invoked federal subject-matter jurisdiction). And second, this action could have been brought in the District of New Jersey: venue would have been proper in that court and it would have had both subject-matter and personal jurisdiction. *See* [22-1] at 7; [25] at 3.

The only disputed question remaining for the Court, then, is whether transfer is appropriate to serve the interests of justice and convenience. Lonza argues transfer is appropriate, basing its argument on five principal factors: Regenicin's choice of forum, the convenience of the witnesses and the Court's ability to compel their attendance, the location of relevant documents, and the locus of operative facts.

### 1.   Regenicin's Choice of Forum

Lonza acknowledges that while a plaintiff's choice of forum is usually accorded heavy weight, Regenicin's choice of the Northern District of Georgia as the forum for this lawsuit is entitled to little or no deference. Lonza claims that Regenicin's connections to this forum are "specious." Regenicin's connections with Georgia are: it formed a wholly owned Georgia subsidiary four days before filing this action and it registered to do business in Georgia as a foreign corporation three days earlier. The Georgia

9

subsidiary has its principal place of business in Little Falls, New Jersey, at the same address where the parent company is headquartered. And the Georgia subsidiary's registered agent is one of Regenicin's local attorneys in this case. No part of the events giving rise to this lawsuit occurred here.

All that, according to Lonza, shows that Regenicin has simply manipulated its corporate form mere days before initiating this lawsuit in a "thinly-veiled attempt to create some contact" with the Northern District of Georgia.

Regenicin does not dispute those facts. It does, however, dispute the allegation that it registered in Georgia and created a Georgia subsidiary just to create Georgia ties for the purposes of this lawsuit. Regenicin presents an affidavit from its CEO in which he states that the company "did not register to do business in Georgia and form a wholly owned subsidiary in [Georgia] in an effort to create ties to this forum," that it did so "to pursue collaborative research with Emory University," and that it "has had ties to Georgia since 2011." [25-1] at ¶¶ 7-8. And Regenicin claims that regardless of when it registered to do business in Georgia and created the Georgia subsidiary, doing so created connections to Georgia.

Regenicin is correct that whatever its motivation, its actions created connections to Georgia. But that is not dispositive of the question facing the Court. No one disputes that Regenicin has some connections to Georgia; the question is whether Regenicin's connections are sufficient to imbue its forum choice with the usual deference given a plaintiff's choice of venue.

The Court, following a long line of cases from this district, finds that it is not. *See supra* note 5. This is not Regenicin's (or any other party's) home district. Regenicin is a New Jersey corporation with its principal place of business in New Jersey. Even its Georgia subsidiary has its headquarters in New Jersey. And none of the events giving rise to this lawsuit occurred in Georgia. Accordingly, Regenicin's choice of venue is not entitled to the usual presumption against disturbing a plaintiff's choice of venue.

Nevertheless, Lonza still bears the burden of showing that the discretionary factors favor transfer. The finding that Regenicin's choice of forum is entitled to little weight merely lowers, but does not eliminate, Lonza's burden. The Court will consider each relevant factor.

### 2. Convenience of Witnesses

Lonza argues that the convenience of the witnesses would be best served by a transfer to the District of New Jersey. The Court agrees.

No witnesses identified by either party reside or work in Georgia. In fact, most reside in New Jersey. Regenicin does not dispute that. Instead, it resists transfer by arguing that Lonza merely makes a "general recitation" that the convenience of the witnesses would be served by transfer. And, it claims, a general recitation is not enough to support transfer. In support of that claim it points to an oft-cited case from the Southern District of Florida, *J.I. Kislak Mortgage Corp. v. Connecticut Bank & Trust Co.*, 604 F. Supp. 346, 347-48 (S.D. Fla. 1985). But Lonza has made a much more specific showing than the movant did in that case. There, the movant merely made

> generalized statements that: 1) all of its employees who will be witnesses reside in or about [the transferee district]; 2) all of its germane business records are in [the transferee district]; and 3) all of the employees of [a related party] are in New York and are not subject to [the transferor court's] compulsory process.

*Id.* at 348. Lonza does not make such generalized statements of inconvenience. It points to Regenicin's initial disclosures and presents affidavit testimony that all fifty-eight witnesses *identified by Regenicin*

12

*itself* live and work outside Georgia.  Further, Lonza notes that out of the seven persons discussed in Regenicin's complaint as relevant parties, four either live or work in New Jersey, and none lives, works, or is subject to compulsory process in Georgia.  And of the potential witnesses identified by Lonza, none live in Georgia, and several live in New Jersey.  Lonza goes far beyond merely stating that all of its employees live in New Jersey and all of Regenicin's employees live in New Jersey.  It looks to all sources for potential witnesses (the complaint and both parties' disclosures) and shows that none lives or works in this district.

Regenicin nevertheless argues that this showing is not specific enough to support transfer.  Regenicin argues that Lonza must state which witnesses will testify and the content of their testimony.  This goes too far.  This case has barely moved past the motion-to-dismiss stage; it would be unreasonable to demand a litigant to know those details with certainty at this point.

Regenicin also points to *Benton v. Crane Merchandising Systems, Inc.*, No. 1:12-cv-185 (WLS), 2013 WL 4779211, at *3-4 (M.D. Ga. Sept. 5, 2013), for the proposition that general recitations of inconvenience will not

13

support transfer.  To be sure, the *Benton* court did recite that rule, and it did deny transfer.  But the relevant facts in that case were distinguishable.

In *Benton* some witnesses lived in the transferor district and others lived in the transferee district.  So the court denied transfer because transferring the case would have "merely shift[ed] the inconvenience from one group of witnesses to another." *Id.*  Here, no witnesses live in the transferor district, and most live in the transferee district.  Transfer would not shift inconvenience; in fact, the overall convenience of the witnesses would be significantly increased by a transfer to the District of New Jersey.

It is true that several witnesses live in neither Georgia nor New Jersey and will be inconvenienced by the need to travel whether the case proceeds here or there.  But beside those witnesses who live in neither state—whose convenience cannot be increased or decreased by a transfer decision—every other witness lives in New Jersey and will benefit from transfer.[6]

---

[6] In fact, a number of the witnesses living outside either state will benefit from transfer.  As the parties explain, a large number of witnesses live in Maryland, where a Lonza entity is based.  Those witnesses—although they do not live in New Jersey—will benefit from transfer because travelling from Maryland to New Jersey is significantly less onerous than travelling from Maryland to Georgia.

14

### 3. Subpoena Power

Lonza also argues that transfer is appropriate because most witnesses reside outside the subpoena power of the Court. Lonza claims that the District Court for the District of New Jersey would have subpoena power over many witnesses. Again, Regenicin does not dispute that this is true. It argues only that while the subpoena power factor "is relevant," it "does not strongly favor transfer." According to Regenicin, many of the out-of-state witnesses are party-witnesses—mostly employees of either Regenicin or Lonza—so they can be compelled to testify in Georgia by their respective employers.

This factor is neutral. This Court cannot exercise its subpoena power over any witnesses, but at the same time most witnesses are employees of the parties, so their attendance at trial could be ensured without resort to compulsory process. This factor neither favors nor disfavors transfer.

### 4. Location of Relevant Documents

Lonza next argues that transfer is warranted because nearly all relevant documents are located outside Georgia: mostly in New Jersey, and some elsewhere. Specifically, Lonza claims that the "vast majority of its . . .

documents are in New Jersey," where it is headquartered.[7] And it claims that Regenicin "store[s] [electronic] documents on hard [drives] and external drives in New Jersey, and a few other places not including Georgia," and stores "physical/paper document files . . . in New Jersey."

This factor is also neutral. Lonza has not explained why electronic documents, wherever they are stored, could not be transmitted to Georgia for trial. Nor has Lonza made a specific showing that documents stored outside Georgia could not be easily transported here for trial. So while this factor does not favor transfer, it also does not favor keeping this case in Georgia because none of the documents is located here.

### 5. Locus of Operative Facts

Finally, Regenicin admits that the locus of operative facts is in New Jersey: it writes that "there is merit to the argument that [its] alleged injuries were sustained in New Jersey, where its principal place of business is located." But it argues that this factor is not enough to "tip the balance" in favor of transfer. The Court agrees that, generally, transfer is not appropriate based only on the fact that the locus of operative facts is

---

[7] Lonza states that some of its electronic documents are stored on servers in Maryland and Switzerland. But one Lonza subsidiary stores all electronic documents in New Jersey, and some Lonza e-mails are archived in New Jersey. In any case, none are stored in Georgia.

16

outside the transferor district. *See, e.g., Grey*, 315 F. Supp. at 831 (describing this factor as one "entitled to consideration but not accorded great weight").

But this is not the only factor favoring transfer: Regenicin's choice of forum is not entitled to great weight in the first place, and the convenience of witnesses also favors transfer. Accordingly, while the Court does not place "great weight" on this factor, it does favor transfer.

### III. Conclusion

Regenicin's choice of this district as its forum is not entitled to deference because this is not its home district, this is not any other party's home district, no events giving rise to this action occurred in this district, and no relevant witnesses or documents relevant are in this district. Because the locus of operative facts is outside this district, and because the convenience of the witnesses—the most important factor in a transfer analysis—favors transfer, the Court finds that transfer to the District of New Jersey is appropriate.

Accordingly, Defendants' motion to transfer [22] is GRANTED. The Clerk is DIRECTED TO TRANSFER this action to the United States District Court for the District of New Jersey.

IT IS SO ORDERED this 1st day of May, 2014.

_____
Timothy C. Batten, Sr.
United States District Judge